CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

January 10, 2025
LAURA A. AUSTIN, CLERK
BY:
s/B. McAbee
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 4:21-cr-00008 |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| ELBRYAN TREMAINE DAVIS, | ) | Senior United States District Judge |
| Defendant-Petitioner | ) | |

### MEMORANDUM OPINION

This matter comes before the court on defendant Elbryan Tremaine Davis's pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 90. The Federal Public Defender was given an opportunity to file a supplemental motion on Davis's behalf but declined to do so. ECF Nos. 91, 94. The government filed a response in opposition to Davis's motion. ECF No. 93. Davis has filed a reply to the response as well as several other letters and documents in support of his motion. ECF Nos. 93, 96, 97, 98, 99, 101, 103. As set forth below, the court will **DENY** Davis's motion.

### I. Background

On March 25, 2021, Davis was charged in an indictment with one count of distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Indictment, ECF No. 1. On October 13, 2021, Davis pled guilty to the charge. Plea Agreement, ECF No. 35; Guilty Plea Form, ECF No. 43. On August 2, 2022, Davis was sentenced to a term of 66 months with credit for time served on related state charges since December 11, 2020, to be followed by a 5-year term of supervised release. J., ECF No. 67.

Davis currently is incarcerated at Federal Correctional Institution (FCI) McDowell and has a projected release date of August 19, 2025.[1]

In his motion for a sentence reduction, Davis makes several claims related to prison conditions and the way his sentence is being calculated and asserts that the problems he is having in prison are grounds for a sentence reduction.[2] In particular, he claims that (1) his sentenced was not reduced by a year even though he completed the Residential Drug Abuse Program (RDAP) offered by the BOP;[3] (2) Staff at FCI Beckley retaliated against him by housing him in the Special Housing Unit for several months after he made comments and filed grievances about the RDAP program and one of the officials who administered the program; (3) Staff at FCI Beckley wrongfully withheld his mail; (4) he has not received adequate medical care for an abscess in his mouth or for anxiety and panic attacks that he is experiencing; and (5) he has made great progress toward rehabilitation and no longer presents a threat to society. The government responded that Davis has not exhausted his administrative remedies and has not pled facts showing that he is entitled to a sentence reduction.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Elbryan Tremaine Davis") (last viewed December 12, 2024).

[2] While Davis currently is housed at FCI McDowell, the events and conditions about which he complains occurred at FCI Beckley.

[3] RDAP, codified at 18 U.S.C. § 3621(e), is an intensive cognitive behavioral therapy program offered in some BOP facilities. Individuals convicted of nonviolent offenses who complete treatment in facilities set apart from the general prison population and comply with other program requirements may earn up to one year off their terms of imprisonment. Eligibility criteria and RDAP requirements are governed by statute and implemented through BOP program statements and policies. https://www.ussc.gov/education/residential-drug-abuse-treatment-program (last revised July 22, 2024) (last viewed Dec. 12, 2024).

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Davis's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

## A. Exhaustion

The court begins by considering the threshold exhaustion requirement for obtaining relief under 18 U.S.C. § 3582(c)(1)(A). United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131 (emphasis in original). In his motion for a sentence reduction, Davis did not state that he exhausted his administrative remedies by asking the warden of his facility to file a motion for compassionate

release and then waited 30 days before filing his motion. See Mot., ECF No. 90. The government asks the court to deny his motion for failure to exhaust.

In subsequent filings, Davis claims that he exhausted his administrative remedies by filing grievance forms with the BOP and appealing the grievances when denied. See, e.g., ECF No. 96. However, in the copies of the forms he submitted, Davis asked for various types of relief, but did not ask the warden to file a motion for a sentence reduction on his behalf. See ECF No. 99 at 3 (arguing that his "points" were not being calculated correctly); Id. at 4–5 (arguing that he was recommended for only four months in a halfway house when he was eligible for six months); ECF No. 101 at 4–9 (complaining that his mail was delivered 30 days late); ECF No. 103 at 5 (asking again about delayed mail and requesting a copy of the mail log); Id. at 7 (complaining in a letter to the Bureau of Prisons Office of General Counsel about having been held in the Special Housing Unit for 76 days); Id. at 11 (asking for an update of an investigation); Id. at 13 (complaining in a letter to the Mid-Atlantic Regional Office about lack of dental care and difficulties filing grievances related to being placed in the Special Housing Unit). While Davis contacted BOP officials several times about issues he was having, he did not refer to a sentence reduction or compassionate release and did not ask the warden to file a motion for compassionate release on his behalf.

In an Inmate Request Form completed on October 27, 2024, Davis refers to a form he started to fill out related to compassionate release and in the response from BOP staff he was advised to "complete [the] provided cop out to warden explaining reason for compassionate release. Give cop out to Case Manager McCoy." ECF No. 101 at 10. This exchange between Davis and the BOP staff person indicates that if he asked the warden to

4

file a motion for compassionate release on his behalf, he did so several months after he filed the motion for a sentence reduction rather than 30 days before filing the motion.

While the exhaustion requirement is a non-jurisdictional claim-processing rule and can be waived by the government, Muhammad, 16 F.4th at 129–130, when the government raises exhaustion as a defense, the district court must address the issue. United States v. Spencer, No. 20-7171, 2022 WL 355775 (4th Cir. 2022) (per curiam). See also Rice v. Rivera, 617 F.3d 802, 810 (4th Cir. 2010) ("Claim-processing rules, by contrast, are to be rigidly applied when invoked by a litigant, but can be forfeited if not raised and pursued in a timely fashion.")

In this case, while Davis has filed numerous grievances with BOP authorities, he has not provided any evidence that he asked the warden of his facility to file a motion for compassionate release on his behalf 30 days prior to filing his motion. Because the court must "rigidly apply" the exhaustion requirement, it now finds that Davis did not exhaust his administrative remedies and his motion is **DENIED** on that basis. In the alternative and as discussed below, the court also **DENIES** Davis's motion on the merits.

### B. Merits

The court next must consider whether it should reduce Davis's term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised policy statement will be applied to Davis's motion.

The policy statement in the revised guidelines now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

(1) Medical Circumstances of the Defendant.

(2) Age of the Defendant.

(3) Family Circumstances of the Defendant.

(4) Victim of Abuse.

(5) Other reasons.

(6) Unusually Long Sentence.

Davis first argues about the treatment he received when he participated in RDAP. He complained that he completed the program, which should have earned him a year off his sentence, but did not receive the credit to which he was entitled. Davis does not argue that the denial of the reduction in his sentence is covered by USSG § 1B1.13(b), but argues in a conclusory fashion that he should either be released from custody or allowed to serve the remainder of his sentence on home confinement.

The court is unaware of any authority that would allow it to grant a sentence reduction on this basis. To the contrary, a defendant's challenge to the computation of his federal sentence and any credit which he may be due is a claim properly asserted under 28 U.S.C. § 2241 rather than in a claim for compassionate release. United States v. Franks, No. 3:17-cr-174-MOC-DCK-1, 2023 WL 3959391, at *3 (W.D.N.C. June 9, 2023) (citing Fontanez v. O'Brien, 807 F.3d 84, 86 (4th Cir. 2015). See also United States v. Snead, 664 F. App'x 270, 271 (4th Cir. 2016) (per curiam) ("[A] federal prisoner must challenge the calculation of his

sentence via the appropriate administrative channels, and if necessary, in a habeas petition under 28 U.S.C. § 2241."). Accordingly, Davis's motion for compassionate release based on his assertion that his sentence is not being calculated correctly is **DENIED**.

Davis also claims that staff members at FCI Beckley retaliated against him by housing him in the Special Housing Unit for several months after he made comments and filed grievances about the RDAP program and one of the officials who administered the program. To the extent Davis is alleging a violation of his civil rights, this type of claim generally is not amenable to consideration in a motion for compassionate release. United States v. Cooper, No. 2:16-cr-00022, 2024 WL 2095945, at *2 (S.D. W.Va. May 9, 2024) (citing United States v. Kellam, No. 5:06-CR-00041-7, 2024 WL 477023, at *3 (W.D. Va. Feb. 7, 2024) and United States v. Fleming, No. CR 2:18-00141, 2022 WL 597529, at *2 n.4 (S.D.W. Va. Feb. 28, 2022)). Rather, relief for a First Amendment retaliation claim would be more appropriately pursued through remedial mechanisms established by the BOP or a suit for injunctive relief brought in the district where Davis is housed. Earle v. Shreves, 990 F.3d 774, 780 (4th Cir. 2021).

The same is true of Davis's complaint that prison staff at Beckley FCI is withholding his mail. Even if true, it does not support the conclusion that he is entitled to a sentence reduction. Rather, that type of claim is subject to resolution by filing an administrative complaint or seeking injunctive relief in court.[4] Therefore, Davis's claims based on retaliation

---

[4] The court notes that Davis filed an administrative complaint with the BOP, asserting that he was receiving mail 30 days after it was post-marked and never received some letters that were mailed to him. ECF No. 101 at 4–5. BOP staff responded that "due to the death of a staff member at another facility with in [SIC] the BOP due to the introduction of drugs in the mail, mail screening slowed down for the safety and security of the facility to include staff and inmates." It was further explained that two staff members were responsible for processing mail for approximately 1,600 inmates and they were behind in copying and processing the mail. ECF No. 101 at 6.

and on the withholding of mail are not extraordinary and compelling reasons for a sentence reduction and his motion based on these allegations is **DENIED**.

Regarding Davis's claim that he has not received adequate medical care for an abscess in his mouth or for anxiety and panic attacks that he has experienced, under certain circumstances an inmate may be entitled to a sentence reduction based on a medical condition. To qualify for a sentence reduction based on medical circumstances, a defendant must show one of the following:

> (A) that he is suffering from a terminal illness with an end-of-life trajectory;
>
> (B) that he is suffering from a serious functional or cognitive impairment or is experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the facility;
>
> (C) that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death;
>
> (D) the defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority and that due to personal health risk factors, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the disease or health emergency and such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1).

Davis has not alleged facts to support a finding that any subsection of § 1B1.13(b)(1) applies to him. He does not allege that he is suffering from a terminal illness or that he is suffering from a serious functional or cognitive impairment or experiencing deteriorating

physical or mental health because of the aging process. USSG §§ 1B1.13(b)(1)(A) and (B). Nor does he complain about an outbreak of an infectious disease at his prison facility. USSG §§ 1B1.13(b)(1)(D).

To the extent that Davis is asserting that subsection (C) applies to him, he has made no showing that he is suffering from a medical condition that requires long-term or specialized care that he is not receiving and without which he is at risk of serious deterioration in his health or death. Davis complained in the motion dated July 1 that was docketed on July 26, 2024, that he had been asking for medical attention since June 24, 2024, to address an abscess in his mouth. He described the abscess as a "constant leak" that was poisonous and could lead to his death. Mot., ECF No. 90 at 3–4. In a letter to the court from Davis dated July 5, 2024, he reported that he had been seen by a dentist who prescribed antibiotics. ECF No. 90-1 at 1. In another document dated October 18, 2024, Davis asserted that he has a "constant recurrence" of an abscess that the medical staff is ignoring. ECF No. 98 at 3. He also claims that his mental and physical health is deteriorating and that he has been suffering from anxiety and panic attacks for which he has been prescribed medication. He also asserts that he has lost almost forty pounds and has aches and pains in his neck, back, shoulders, and knees from the thin mat on his bunk. Id. at 2.

Although the recurrence of the abscess is no doubt painful and worrisome and the anxiety and panic attacks unpleasant, Davis nevertheless has not shown that that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death. He has received medication for both the abscess and the anxiety and panic attacks, and he neither

alleges nor offers proof that he is at risk of serious deterioration in his health or death. Accordingly, he has not shown an extraordinary and compelling reason that would warrant a sentence reduction.[5]

Finally, Davis contends that he is entitled to a sentence reduction because he has done very well while incarcerated. He claims that he has a clear disciplinary record, has taken several classes, and has a comprehensive release plan. ECF No. 98 at 3. While the court is impressed with Davis's rehabilitation since he has been incarcerated, his argument that he is entitled to a sentence reduction on that basis is foreclosed by USSG § 1B1.13(d). That section of the sentencing guidelines provides that "pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." Rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Because Davis has not alleged or provided evidence of any other extraordinary and compelling reason for a sentence reduction, the court will not consider his rehabilitation as a standalone reason for a sentence reduction. For this reason, the court will **DENY** Davis's motion for a sentence reduction based on his rehabilitation.

As Davis has not shown an extraordinary and compelling reason for compassionate release, the court will not address the § 3553(a) factors. See United States v. Bethea, 54 F.4th

---

[5] If Davis believes that BOP authorities are being deliberately indifferent to his serious medical needs in violation of his constitutional rights, he may file an action under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Carlson v. Green, 446 U.S. 14 (1980) (extending Bivens cause of action to claims of deliberate indifference to serious medical needs). Such a claim would need to be filed in the district where he is incarcerated. Fleming, 2022 WL 597529 at *2 n.4.

826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

## III. Conclusion

For the above-stated reasons, the court **DENIES** Davis's motion for compassionate release, ECF No. 90, both as unexhausted and, alternatively, on the merits. The Clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED.**

Entered: January 10, 2025

Michael F. Urbanski
Senior United States District Judge